**Walter A. READ, Plaintiff,**

v.

**George P. BAKER et al., Trustees of the property of Penn Central Transportation Company, Defendants.**

**Civ. A. No. 4580.**

United States District Court, D. Delaware.

March 25, 1977.

C. Waggaman Berl, Jr., Wilmington, Del., for plaintiff.

Robert K. Payson and Donald J. Wolfe, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for defendants.

LATCHUM, Chief Judge.

Plaintiff Walter Read has brought this diversity action against his former employer, the Penn Central Transportation Company,[1] seeking compensatory and punitive damages for alleged libel, slander, and wrongful discharge. Before the Court is defendant's motion for summary judgment pursuant to Rule 56(b), F.R.Civ.P.

The plaintiff was a journeyman machinist for Penn Central in September, 1970, when he allegedly suffered a back injury which forced him to miss several months of work.[2] Later, upon notification that he had been formally discharged, the plaintiff brought suit against Penn Central in the District Court for the Eastern District of Pennsylvania (hereinafter the "Pennsylvania litigation") seeking compensatory damages for an employment-related injury.[3] Trial in the Eastern District began on November 4, 1971. The transcript of that proceeding indicates that the defendant's lawyer alluded to expert witnesses who were expected to testify that a mental or emotional disorder was the source of the plaintiff's alleged physical infirmity.[4] But before the experts actually testified the Court was informed that the parties had agreed to settle the case.[5] Thus on November 17, 1971, the parties executed a settlement agreement in which the plaintiff, in consideration for fifteen thousand dollars, released Penn Central "from all claims, demands, actions and causes of action of every kind whatsoever."[6]

The plaintiff's complaint, filed in this court approximately fifteen months after

1. The complaint was amended to name as defendants George P. Baker, Richard C. Bond, Jervis Langdon, Jr., and Willard Wirtz as Trustees of the property of the Penn Central Transportation Company, a debtor corporation. (Docket Item 13). For convenience the Court will refer to the named defendants as "Penn Central" or the "defendant."

2. Docket Item 34, Ex. C.

3. Docket Item 27, pp. 9–11.

4. Docket Item 34, Ex. C pp. 5–10.

5. *Id.,* pp. 127–130.

6. Docket Item 34, Ex. A.

the Pennsylvania litigation,[7] contains three basic causes of action: (1) that Penn Central "wrongfully discharged" the plaintiff on February 11, 1971; (2) that statements made in court and published in the trial record of the Pennsylvania litigation concerning the plaintiff's mental health constitute slander and libel; and (3) that continuously from 1965 until 1971 Penn Central or its agents caused the plaintiff embarrassment and humiliation by releasing slanderous and libelous information to other employees of the defendant.

### I. Defense of Release of All Three Claims.

■ Initially, the defendant argues that the plaintiff cannot prevail on any of the three foregoing causes of action by virtue of the general release executed upon settlement of the Pennsylvania litigation. However, in light of the rule that a trial court may grant summary judgment only "if it determines from its examination of the allegations in the pleadings and any other evidential sources available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law,"[8] the Court cannot grant summary judgment where there are conflicting factual inferences with regard to the scope of the release intended by its signatories.[9] Whether the release was meant to cover only the claims asserted in the Pennsylvania litigation for his injuries there alleged, or whether it was in satisfaction of any and all claims then existing that could be asserted against Penn Central is a genuine issue of material fact that renders summary disposition, on this ground, inappropriate.

### II. Defense of Lack of Subject Matter Jurisdiction of Wrongful Discharge Claim.

■ The defendant next contends that this Court is without subject matter jurisdiction over the cause of action based on wrongful discharge because plaintiff has failed to pursue the exclusive federal administrative remedy provided by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.[10] The Court agrees with this contention and, accordingly, will enter an order dismissing this aspect of the plaintiff's action pursuant to Rule 12(h)(3), F.R.Civ.P.

In 1972 the Supreme Court held that in the context of a discharge grievance under the RLA a claim of wrongful discharge must first be processed and settled before the Railroad Adjustment Board ("RAB"). *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In that case the plaintiff, a railroad employee in good standing, was injured in an automobile accident. After he allegedly had fully recovered and was physically able to resume his duties, the company refused to allow his return to work. The plaintiff brought suit against the company for wrongful discharge seeking damages consisting of past and future earnings and attorney's fees. Previously, *Moore v. Illinois Central R. Co.,* 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941) had held "that a railroad employee who elected to treat his employer's breach of the employment contract as a discharge was not required to resort to the remedies afforded under the Railway Labor Act for adjustment and arbitration of grievances, but was free to

7. The original complaint, which was filed on February 8, 1973 (Docket Item 1) also named Dr. Nicholas Bash, a psychiatrist who examined the plaintiff in 1965 at the request of Penn Central's company doctor, as a defendant. After preliminary discovery was taken, the parties agreed that Dr. Bash should be dismissed from the suit and it was so ordered. (Docket Item 18) Because the defendant found it necessary to conduct extended discovery in order to elucidate some of the plaintiff's claims for relief and because of a change in attorneys representing the plaintiff, the instant motion for summary judgment was not filed until October 6, 1976 and briefing was not completed until February 11, 1977.

8. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (C.A. 3, 1976).

9. *See* Docket Item 35, pp. 23–27, 35–36.

10. The RLA governs labor relations in the railroad and airline industries. Section 153 of that Act provides for a system of compulsory arbitration of employee grievances concerning interpretation and application of collective bargaining agreements.

commence in state court an action based on state law for breach of contract." *Andrews, supra,* 406 U.S. at 321, 92 S.Ct. at 1564.

But *Andrews* overruled *Moore* on the ground that the "provision for arbitration of a discharge grievance, a minor dispute, is not a matter of voluntary agreement under the Railway Labor Act; the Act compels parties to arbitrate minor disputes before the National Railroad Adjustment Board established under the Act." *Andrews, supra,* 406 U.S. at 322, 92 S.Ct. at 1564, *quoting Walker v. Southern R. Co.,* 385 U.S. 196, 198, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966).

The plaintiff here claims that Penn Central refused to allow him to return to his job following an injury that forced him to miss several months of work. It is agreed by all, however, that the collective-bargaining agreement then in effect between the Pennsylvania Railroad Company (Penn Central) and the International Association of Machinists (plaintiff's union) established the procedure for determining whether an employee was physically able to return to work.[11] Thus, the source of the plaintiff's right not to be discharged or to treat a discharge as "wrongful" and entitling him to damages was the bargaining agreement between the union and his employer.[12]

In *Andrews* the Court observed that

"the pleadings indicate that the disagreement turns on the extent of respondent's obligation to restore petitioner to his regular duties following injury in an automobile accident. The existence and extent of such an obligation in a case such as this will depend on the interpretation of the collective-bargaining agreement. Thus petitioner's claim, and respondent's disallowance of it, stem from differing interpretations of the collective-bargaining agreement. . . . His claim is therefore subject to the [Railway Labor] Act's requirement that it be submitted to the Board for adjustment." 406 U.S. at 324, 92 S.Ct. at 1565.

There is no dispute here that the plaintiff neither pursued his grievance adjustment remedies before a tribunal created by the machinists union collective-bargaining agreement nor sought to vindicate his alleged wrongful discharge before a division of the RAB.[13] Accordingly, since arbitration of plaintiff's discharge grievance before the RAB is plaintiff's *exclusive* federal remedy,[14] this Court is without subject matter jurisdiction over this claim and that claim will be dismissed. *Haney v. Chesapeake & Ohio R. Co.,* 162 U.S.App.D.C. 254, 498 F.2d 987, 990 (1974); *Tate v. Long Island R. Co., supra,* 415 F.Supp. at 846; *Magnuson v. Burlington Northern, Inc.,* 413 F.Supp. 870, 872 (D.Mont.1976).

III. *Defense That Statements Allegedly Libelous and Slanderous In Pennsylvania Litigation Were Absolutely Privileged.*

The defendant also contends that the plaintiff's slander and libel claim based on statements by defendant's counsel during the Pennsylvania litigation and transcribed in the trial record is barred by an absolute privilege that attaches to statements and

---

11. Docket Item 34, Ex. B.

12. Even though the plaintiff's cause of action at times sounds in tort, his grievance nevertheless arises out of the collective-bargaining agreement. *See Tate v. Long Island R. Co.,* 415 F.Supp. 845 (E.D.N.Y.1976). As the Court in *Andrews* noted: "The fact that petitioner characterizes his claim as one for 'wrongful discharge' does not save it from the [Railway Labor] Act's mandatory provisions for the processing of grievances." 406 U.S. at 323–24, 92 S.Ct. at 1565.

13. Docket Item 34, Brown Affidavit par. 3; Docket Item 35, p. 34.

14. Although the Supreme Court conceded that the term "exhaustion of administrative remedies" might be considered an "appropriate description" of the obligation of both the employee and carrier under the RLA to resolve minor disputes in accordance with the settlement procedures provided by that Act, the clear implication of the Court's holding is that the RLA provides an *exclusive* federal administrative remedy. *See Andrews, supra,* 406 U.S. at 325, 92 S.Ct. 1562; *Harrison v. United Transportation Union,* 530 F.2d 558, 562 (C.A. 4, 1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976).

documents published in the course of judicial proceedings.

 At the outset the Court recognizes that in diversity of citizenship cases, when deciding what law to apply, federal district courts must follow the rules prevailing in the states in which they sit. *Day & Zimmermann v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In a tort action brought in Delaware, its courts hold that the substantive rights of the parties are governed by the law of the place in which the tort takes place. *Friday v. Smoot*, 211 A.2d 594 (Del.Supr.1965); *Lumb v. Cooper*, 266 A.2d 196 (Del.Super.1970). Therefore, since the alleged publication of calumniatory matters was in connection with the Pennsylvania litigation, Delaware's conflict of laws rule requires the application of Pennsylvania law to the substantive issues in dispute.

 Like many jurisdictions today, Pennsylvania law provides that statements, otherwise defamatory, by judges, counsel, parties and witnesses in connection with a judicial proceeding are absolutely privileged if such statements are "pertinent, relevant and material to any issue" in the proceeding. *Greenberg v. Aetna Ins. Co.*, 427 Pa. 511, 514, 235 A.2d 576, 578 (1967), *cert. denied*, 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366, *rehearing denied*, 393 U.S. 899, 89 S.Ct. 72, 21 L.Ed.2d 187 (1968); *Kemper v. Fort*, 219 Pa. 85, 67 A. 991 (1907).

 The libel and slander which the plaintiff attributes to statements by defendant's attorney during the Pennsylvania litigation and transcribed in the trial record relating to the anticipated testimony of medical experts is barred by the absolute privilege protecting judicial proceedings. The expected testimony of the defendant's medical experts was clearly relevant and material to the issues of whether the plaintiff's injury was preexisting and the extent, if any, of actual pain and suffering. The defendant's attorney, therefore, was entitled to bring the substance of that testimony to the attention of the jury. Accordingly, the statements made and transcribed during the Pennsylvania litigation are absolutely privileged and cannot form the basis of a claim for libel or slander. *See Selas Corp. of America v. Wilshire Oil Co. of Texas*, 344 F.Supp. 357, 359 (E.D.Pa.1972); *Greenberg v. Aetna Ins. Co., supra.*[15]

## IV. Defense of Statute of Limitations To Slanderous and Libelous Statements.

The defendant further contends that the alleged release of libelous and slanderous information to others regarding plaintiff's mental condition between 1965 and 1971 is in part barred by the applicable Delaware statute of limitations.[16]

 Under 10 Del.C. (1974) § 8119 [17] an action to recover damages for libel and slander is "an action for the recovery of damages for alleged personal injuries" and such actions are barred after the expiration of two years from the date the alleged libelous statement was published or the slanderous statement made. *McNeill v. Tarumianz*, 138 F.Supp. 713 (D.Del.1956).[18]

---

15. Delaware law with respect to privileged communications in judicial proceedings is identical to that of Pennsylvania. *See, e. g., Tatro v. Esham*, 335 A.2d 623, 626 (Del.Super.1975) and cases cited therein. Thus if the Court were to apply the substantive law of Delaware as the lex delicti, the result would be the same.

16. This defense was asserted in defendant's answer to the complaint (Docket Item 17, p. 4) and was fully briefed on its motion for summary judgment. (Docket Item 23)

17. In a diversity action a federal district court must apply the statute of limitations that the forum state would apply. *Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 1211 (1953). The defendant's alleged release of slanderous and libelous medical records occurred at the defendant's Wilmington shop where the plaintiff was employed and near where he lives. The plaintiff's cause of action, therefore, arose in Delaware and must be tested against the two year statute of limitations provided in 10 Del.C. (1974) § 8119.

18. The Delaware statute of limitations applicable to libel and slander actions construed in the *McNeill* case has since been amended only by extending the limitation period from one to two

The record is undisputed that the libelous statements were allegedly published and the slanderous statements allegedly made between April 21, 1965[19] and November 17, 1971.[20] However, because the complaint was not filed in this court until February 8, 1973, any slanderous statement made or libelous statement published before February 8, 1971 by defendant, is time barred by 10 Del.C. (1974) § 8119. Accordingly, evidence to be adduced at trial relating to plaintiff's cause of action based on defendant's alleged release of slanderous or libelous information will be restricted to any such statements which occurred between February 8, 1971 and November 17, 1971. Therefore summary judgment will be entered in defendant's favor and against the plaintiff for any alleged libelous or slanderous statements made before February 8, 1971.

V. *Defense of Conditional Privilege To Slanderous And Libelous Statements.*

■ Finally, the defendant contends that the dissemination of information concerning an employee's character or qualifications to persons with a legitimate interest therein is generally protected by the doctrine of conditional or qualified privilege. Summary disposition on this ground is inappropriate, however, because there are conflicting inferences in the record, when considered in a light most favorable to the plaintiff, which raise a factual question as to whether the defendant abused the privilege by excessive publication or by releasing information with an improper motive. *E. g., Burr v. Atlantic Aviation Corp.,* 348 A.2d 179 (Del.Supr.1975). Accordingly, the Court will enter an order denying the defendant's motion for summary judgment on this ground and specifying the factual issues to be determined at trial.

An order will be entered in accordance with this opinion.

## ORDER

For the reasons set forth in the Court's memorandum opinion entered in this case on this date, it is

ORDERED:

1. Plaintiff's claim for damages based on his "wrongful discharge" is hereby dismissed pursuant to Rule 12(h)(3), F.R. Civ.P., for lack of subject matter jurisdiction.

2. Summary judgment, pursuant to Rule 56(b) F.R.Civ.P., is hereby granted in favor of defendants, George P. Baker, Richard C. Bond, Jervis Langdon, Jr. and Willard Wirtz as Trustees of the property of Penn Central Transportation Company, Debtor (herein "defendant") and against the plaintiff Walter A. Read with respect to plaintiff's claims based on the publication of allegedly slanderous and libelous statements made during the course of the 1971 judicial proceedings involving *Walter A. Read v. Penn Central,* C.A. No. 71–982 in the United States District Court for the Eastern District of Pennsylvania because any such statements were absolutely privileged.

3. Summary judgment, pursuant to Rule 56(b), F.R.Civ.P., is hereby granted in favor of the aforesaid defendant and against the plaintiff with respect to plaintiff's claims based on the publication of allegedly slanderous and libelous statements made prior

years. Compare 10 Del.C. (1953) § 8118 with 10 Del.C. (1974) § 8119.

**19.** April 21, 1965 is the date alleged in the complaint (Docket Item 1, par. 22) as the beginning date for the alleged libelous and slanderous statements.

**20.** Although the complaint states in several paragraphs that the alleged slanderous and libelous statements continued to November, *1972* (See Docket Item 1, pars. 12, 16, 18, 22, 25, 29), other records show that *1972* was erroneously alleged in the complaint and should have been *1971.* For example, defendant refused to permit plaintiff to return to work on February 11, *1971* (Docket Item 31, par. 3; Docket Item 35, pp. 6, 17); plaintiff's Pennsylvania litigation was tried on November 4 and 5, *1971* (Docket Item 31, par. 5 & Ex. C.); plaintiff executed the general release to defendants on November 17, 1971 (Docket Item 34, Ex. A.); defendant's physician, Dr. Ulrich, last examined plaintiff for work-related conditions in February, 1971. (Docket Item 27, pp. 48–49).

to February 8, 1971 because they are barred by the limitation period set forth in 10 Del.C. (1974) § 8119.

4. Defendant's motion for summary judgment is hereby denied with respect to plaintiff's claims based on the publication or release of any allegedly slanderous and libelous statements made by defendant between February 8, 1971 and November 17, 1971.

5. The following issues (which supersede those enumerated in the Pre-trial Order, Docket Item 26, p. 2) remain for trial:

(A) Whether the defendant knowingly, either orally or in writing, published or disseminated any false medical information concerning plaintiff to others between February 8, 1971 and November 17, 1971 except for that revealed in the Pennsylvania litigation.

(B) Whether the defendant abused its qualified privilege by maliciously publishing or disseminating false medical information concerning plaintiff to unauthorized persons between February 8, 1971 and November 17, 1971 except for that revealed in the Pennsylvania litigation.

(C) Whether plaintiff suffered any damages and the amount thereof by virtue of the publication or dissemination of any false medical information concerning plaintiff.

(D) Whether the general release executed by plaintiff and delivered to the defendant on November 17, 1971 released plaintiff's claims accruing between February 8, 1971 and November 17, 1971 for slander and libel stemming from the defendant's publication and dissemination of any alleged false medical information regarding the plaintiff.

6. A pre-trial conference will be held at *9:30 A.M.* on *Monday, April 4, 1977*; a revised pre-trial order will be submitted by the parties on the day of the pre-trial conference required by Local Rule 11.

7. In addition to contents of the proposed pre-trial order required by U.S. District Court of Delaware Rule 11 D, the proposed pre-trial order shall also state:

(A) Whether any party desires a special verdict or interrogatories and if so, set forth the form of special verdict or interrogatories suggested. (Rule 49, F.R.Civ.P.).

(B) Whether any party desires special voir dire questions to be asked of the jury panel, and if so, set forth the form of the voir dire questions suggested.

8. At the same time that the proposed pre-trial order required by Rule 11 D is submitted to the Court, respective counsel for the parties shall also submit to the Court their requests for instructions to the jury.

9. A trial date will be set at the above pre-trial conference.