Father Bernard R. PAGANO, Plaintiff,

v.

Detective Timothy HADLEY, Detective Thomas Shannon, Detective Warren Scheuler, Jr., and Corporal Albert Ament, Defendants.

Civ. A. No. 81–381.

United States District Court,
D. Delaware.

Dec. 3, 1982.

John T. Owens, Wilmington, Del., Alfred R. Fabricant, Shea & Gould, New York City, for plaintiff.

H. Murray Sawyer, Jr., Roger A. Akin, Wilmington, Del., for defendants.

## OPINION

STAPLETON, District Judge:

During January and February of 1979, northern New Castle County, Delaware, experienced a rash of armed robberies. This series of crimes was remarkable for the similarities among the offenses: each robbery occurred either on a Tuesday or a Thursday, each was committed by a middle-aged man approximately six feet in height who was well dressed and clean in appearance, and each was committed with the aid of a small caliber automatic. The local press labeled these crimes the "Gentleman Bandit robberies."

On February 27, 1979, Delaware State Police arrested Father Bernard T. Pagano, a Catholic priest, and charged him with the robberies. The officers brought Pagano before Justice of the Peace John H. Wilding for arraignment, who ordered Pagano committed in default of bail. Soon after the hearing before Wilding, a preliminary hearing was convened by Judge Arthur F. DiSabatino of the Court of Common Pleas who determined that probable cause existed to hold plaintiff over for grand jury action. On March 20, 1979, the New Castle County grand jury handed down indictments against Father Pagano on the six crimes charged.

Trial commenced on August 6, 1979, and shortly after the State finished presenting its case-in-chief, the trial judge was informed that Ronald W. Clouser had confessed to committing the "Gentleman Bandit" crimes. On August 23, 1979, prosecutors dismissed all of the armed robbery charges against Pagano.

Almost two years later, on August 20, 1981, Father Pagano filed a complaint in this Court against Justice of the Peace Wilding, the State of Delaware, and four State Police officers setting forth federal claims under 42 U.S.C. §§ 1983 and 1985 and pendent claims for defamation of character and infliction of emotional distress. Currently before the Court is a motion for summary judgment brought by the four Delaware State Police officers.[1]

■ Plaintiff's claim under 42 U.S.C. § 1985 may be dispensed with quickly. Plaintiff alleges in Count II of the complaint that defendants conspired to deprive plaintiff of his Fourteenth Amendment rights of due process and equal protection of the law in violation of 42 U.S.C. § 1985. The United States Supreme Court has interpreted the language of Section 1985—permitting a cause of action for the deprivation of equal protection, privileges or immunities—to mean that "there must be some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). *See also Jennings v. Shuman,* 567 F.2d 1213, 1221 (3d Cir.1977). Plaintiff has not alleged that defendants' actions were discriminatorily motivated and has tendered no evidence in response to defendants' motion from which such an inference could be drawn. Accordingly, plaintiff's claim under Section 1985 will be dismissed.

---

1. In ruling on the defendants' earlier motion to dismiss, the Court dismissed the complaint against all the defendants except the four Delaware State Police officers in their individual capacities.

Plaintiff's remaining federal claim alleges that defendants deprived plaintiff of his Fourteenth Amendment rights of due process in violation of 42 U.S.C. § 1983. In support of this claim, plaintiff alleges that defendants collected evidence and presented it to potential witnesses in an improperly suggestive manner with the purpose of fabricating a case implicating plaintiff as the individual responsible for the Gentleman Bandit crimes, wrongfully arrested and detained plaintiff without probable cause, failed to investigate plaintiff's alibi witnesses, and neglected to pursue Ronald Clouser as a suspect of the crimes. In support of his pendent claim for defamation of character, plaintiff alleges that defendants released false and misleading statements to the press concerning plaintiff's case, causing injury to plaintiff's reputation as an individual and as a priest. Finally, plaintiff alleges that by wrongfully charging plaintiff with crimes and by requiring him to incur legal fees and make court appearances, defendants' conduct supports a pendent claim for infliction of severe emotional distress. The defendants argue that the Section 1983 claim, as well as the pendent claims, are barred by the statute of limitations and, in the alternative, that the undisputed competent evidence of record entitles them to a summary adjudication of the merits of some of plaintiff's claims.

## I. THE LIMITATIONS ISSUES.

### A. The Section 1983 Claim.

■ Since there is no federal statute of limitations for a cause of action under Section 1983, the appropriate limitations period is determined by reference to the most analogous cause of action under state law. *Jennings v. Shuman,* 567 F.2d 1213, 1216 (3d Cir.1977); *Polite v. Diehl,* 507 F.2d 119, 122 (3d Cir.1974); *Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir.1974). Plaintiff first suggests that his Section 1983 claim could be analogized to a cause of action under Delaware law for "civil conspiracy."

I conclude, however, that a "civil conspiracy" would not be the proper analogy in view of the Third Circuit's decision in *Ammlung v. City of Chester,* 494 F.2d 811 (3d Cir.1974).

In *Ammlung,* suit was brought against various city officials and police officers alleging, *inter alia,* illegal arrest, false imprisonment, criminal negligence and due process violations, in connection with a youth's death while jailed overnight. Plaintiff argued that the claims constituted a cause of action for civil conspiracy, subject to a six-year limitations period under Pennsylvania law. The Court held that the complaint failed to properly plead conspiracy, but noted that even if the complaint had so pleaded, it was proper for the district court to look to the limitations provisions applicable to the underlying substantive offense which defendants allegedly conspired to commit. *Id.* at 814–15.

■ Thus, even assuming the complaint in the present case satisfactorily alleges a claim of conspiracy under Section 1983, we must look to the underlying constitutional torts allegedly committed by the defendants to assist in determining the applicable limitations period. The law has recognized two constitutional torts upon which liability might be predicated under the circumstances of this case, one analogous to the common law tort of false imprisonment and the other analogous to the common law tort of malicious prosecution. Courts have held that conduct which would result in liability for false imprisonment or malicious prosecution at common law will result in liability under Section 1983 when engaged in by someone acting under color of state law, since such conduct occasions a deprivation of liberty without due process of law. At the same time, courts have realized that the common law in these areas represents a delicate balance between important but conflicting interests of society and the individual[2] and, accordingly, have looked to

---

**2.** For example, as described in the Restatement (Second) of Torts, Ch. 29 Introductory Note at

405 (1977), the restrictions imposed upon a recovery for malicious prosecution

that body of law to define the perimeters of these two constitutional torts. *See, e.g., Jennings v. Shuman,* 567 F.2d 1213 (3d Cir. 1977); *Anthony v. White,* 376 F.Supp. 567 (D.Del.1974).

■ Since these constitutional torts are coterminous with the common law torts of false imprisonment and malicious prosecution where the defendant has acted under color of state law, it is these analogous state law torts to which we must look initially in the search for the applicable statutes of limitations. As noted, hereafter, however, it is the character of the injury inflicted as well as the nature of the tort which determines the applicable statute under Delaware law. In the circumstances of this case, the two statutes which the Delaware courts might arguably apply to a false imprisonment claim or a malicious prosecution claim are a two year statute, 10 Del.C. § 8119,[3] and a three year statute, 10 Del.C. § 8106.[4] I conclude that the two year statute governs both claims, but that only plaintiff's false arrest claim is barred by that statute.

### 1. *False imprisonment.*

■ The essence of a cause of action for false imprisonment, sometimes called false arrest, is unlawful detention. As Professor Prosser states: "It protects the personal interest in freedom from restraint of move-

ment." Prosser, *Law of Torts* § 11, at 42 (1971). *See Nesmith v. Alford,* 318 F.2d 110, 118–19 (5th Cir.1963).

In the present case, the first alleged acts of detaining plaintiff or restricting his movements occurred on February 27, 1979. On that date, defendants arrived at plaintiff's home to ask him to accompany them to Troop 2. While at plaintiff's home, defendants conducted a search and discovered two black hats, similar to the hat worn by the "Gentleman Bandit" during the robberies. On the way to the police station, plaintiff was read his *Miranda* rights, although he was not yet placed under formal arrest. At the station, plaintiff was questioned by the officers and voluntarily submitted to photographs and to a polygraph test. Plaintiff claims that at one point during the questioning, he requested permission to go to a coffee shop nearby for food, but was not allowed to do so. At approximately 11:00 P.M., after Justice of the Peace Wilding issued arrest warrants upon the affidavits of several of the defendant officers, plaintiff was formally arrested.

■ Without deciding the point at which the defendants' acts on February 27, 1979, constituted an actual "arrest," I conclude that the alleged acts of inhibiting plaintiff's freedom from the point of departure from his residence up to the com-

---

represent an adjustment between two highly important social interests. The first is the interest of society in the efficient enforcement of the criminal law, which requires that ... persons who aid in the enforcement of the law should be given an effective protection against the prejudice that is likely to arise from the termination of the prosecution in favor of the accused. The second is the interest that the individual citizen has in being protected against unjustifiable and oppressive litigation of criminal charges, which not only involve pecuniary loss but also distress and loss of reputation.

**3.** 10 Del.C. § 8119 provides:
 No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained; subject, however, to the provisions of § 8127 of this title.

**4.** 10 Del.C. § 8106 states:
 No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title.

mencement of formal legal proceedings before the Justice of the Peace, could support a cause of action for the constitutional tort of false imprisonment.[5]

The remaining issue is whether plaintiff met the statute of limitations deadline. According to this Court's decision in *Chrisco v. Shafran*, 525 F.Supp. 613 (D.Del.1981), the two-year limitations period under 10 Del.C. § 8119 is the appropriate time period to apply to a cause of action for false imprisonment. Since the alleged acts of the defendants that would support a claim of false imprisonment occurred on February 27, 1979—more than two years before plaintiff's filing date of August 30, 1981—any claim based on those acts is barred by the statute of limitations.

### 2. Malicious prosecution.

A cause of action for malicious prosecution is similar in some respects to a cause of action for false imprisonment, but the two actions have been distinguished as follows:

Malicious prosecution is the groundless institution of criminal proceedings against the plaintiff. False imprisonment fell within the action of trespass, as a direct interference with the plaintiff's person, while malicious prosecution was regarded as more indirect, and the remedy for it was an action on the case. The distinction between the two lies in the existence of valid legal authority for the restraint imposed. If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized, the court and its officers are not his agents to make the arrest, and their acts are those of the law and the state, and not to be imputed to him. He is therefore liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. The action must be for malicious prosecution. . . .

Prosser, *Law of Torts* § 11, at 49 (1971). *See also Restatement (Second) of Torts* § 654 comment e (1977).

The essential elements of a cause of action for the constitutional tort of malicious prosecution are as follows:

1. Institution or continuation of a criminal proceeding by the defendant acting under color of state law;

2. Termination of the proceeding in favor of the accused;

3. Absence of probable cause for the proceeding;

4. Lack of the proper purpose of bringing an offender to justice.

*Nesmith v. Alford*, 318 F.2d 110, 121 (5th Cir.1963); *Anthony v. White*, 376 F.Supp. 567, 572–73 (D.Del.1974); *Restatement (Second) of Torts* § 653 (1977).

Plaintiff claims that evidence which was ultimately used by defendants in the institution and continuation of criminal proceedings against plaintiff was known by them, or should have been known by them to be unreliable, that plaintiff was singled out without probable cause as the individual responsible for the robberies and that defendants knowingly and willfully participated in a conspiracy to "frame" plaintiff. In addition, the parties do not dispute the fact that the criminal proceedings were terminated in favor of plaintiff after Ronald Clouser confessed to the crimes.

The more difficult question is which of the two Delaware statutes of limitations, cited above, should govern here. There are no Delaware cases which directly address a limitations problem arising in the context of a malicious prosecution claim similar to the claim presented here. However, as noted earlier, this Court in *Chrisco v. Shafran*, 525 F.Supp. 613 (D.Del.1981), did address the limitations question in a case involving a similar claim of false imprisonment.

As *Chrisco* instructs, the first step in determining the proper limitations period under Delaware law is to focus on the na-

---

**5.** Once formal legal proceedings are commenced, defendants' improper conduct might make them liable for malicious prosecution, but not for false imprisonment. *See* discussion of a cause of action for malicious prosecution, *infra.*

ture of the injury suffered rather than the form of action brought. *Chrisco,* 525 F.Supp. at 615. *See Read v. Local Lodge 1284, Int'l Ass'n. of Machinists,* 528 F.2d 823, 825 (3d Cir.1975). To ascertain whether a given claim may be characterized as a "personal injury" claim subject to the two-year limitations provision in 10 Del.C. § 8119, the following description is helpful:

> [T]he words, "personal injuries" ... should be given the same or equivalent meaning as that long understood to be their meaning when used by recognized authorities and the courts. Blackstone classified and distinguished those rights which are annexed to the person jura personanum. He included within this classification personal security which consists, "in a person's legal and uninterrupted enjoyment of his life, his limits, his body, his health and his reputation."

*McNeill v. Tarumianz,* 138 F.Supp. 713, 716 (D.Del.1956). (citations omitted).

Following these principles, I conclude that plaintiff's cause of action for malicious prosecution is in the nature of a personal injury claim. That claim involves an alleged deprivation of plaintiff's personal liberty without justification, and an intrusion into plaintiff's personal security and uninterrupted enjoyment of life.[6]

 In summary, I conclude that plaintiff's Section 1983 claim is akin to a cause of action for malicious prosecution. That claim is in the nature of a personal injury claim and is therefore subject to the two-year limitations period under 10 Del.C. § 8119. Since one of the elements of a cause of action for malicious prosecution is the termination of the proceeding in favor of the accused, however, I conclude that plaintiff met the filing deadline by submitting his complaint within two years of the date the charges against him were dropped.

### B. Pendent Claims.

 Turning to plaintiff's pendent claims for defamation of character and infliction of severe emotional distress, the parties seem to agree that the two-year statute of limitations, 10 Del.C. § 8119, should govern. *See Read v. Baker,* 430 F.Supp. 472, 476–77 (D.Del.1977) (two-year limitations period applied in action for libel and slander); *Smith v. Goldstein,* 447 F.Supp. 1244, 1246 (D.Del.1978) (two-year statute applied to claims of defamation and intentional infliction of mental distress). The only issue, therefore, is whether plaintiff suffered injuries relating to these claims within the two-year period preceding his filing date of August 20, 1981.

As to the defamation claim, plaintiff alleged that at least five newspaper articles were published after August 20, 1979 which contained false and defamatory statements attributable to the defendant police officers. Similarly, plaintiff's claim of infliction of severe emotional distress is based, at least in part, on the alleged acts of defendants occurring after August 20, 1979. In particular, plaintiff alleges defendants maliciously harassed and embarrassed him by sparking rumors that plaintiff was responsible for the "Gentleman Bandit" crimes, despite Ronald Clouser's confession.

 I conclude, for present purposes, that any of plaintiff's claims for defamation and infliction of emotional distress that are based on defendants' acts occurring before August 20, 1979 are barred by the statute of limitations. Accordingly, any future discovery with regard to these pendent claims will be restricted to defendants' post-August 20, 1979 conduct. *See Read v. Baker,* 430 F.Supp. at 477.

### II. OTHER ISSUES.

Defendants also maintain that they are entitled to summary judgment on plaintiff's federal claims because the undisputed facts

---

**6.** Thus, I find inapplicable the case of *Smith v. Goldstein,* 447 F.Supp. 1244 (D.Del.1978), where the three-year statute of limitations, 10 Del.C. § 8106, was applied to a claim based on malicious use of process. There the plaintiff's malicious use of process claims involved alleged injuries to his business and possessions, thus distinguishing it from a claim like that presented here, involving personal injuries. *Id.* at 1247.

currently of record demonstrate both that there is no basis for those claims and that, in any event, defendants are protected by official immunity. Plaintiff has countered with a Rule 56(f) affidavit claiming that he should be permitted discovery before having to respond to summary judgment motions. While plaintiff has had ample time to take discovery in this action, his reluctance to incur this expense before a decision on the limitations defenses is understandable.[7] Accordingly, I will permit a three month period for further discovery before deciding defendants' motion for summary judgment on these issues. If plaintiff believes that the product of such discovery provides evidence that either supports the four essential elements of the constitutional tort of malicious prosecution or is relevant to the official immunity defenses, he may file a supplemental brief commenting on that evidence on or before March 1, 1983. If such a brief is filed, defendants may reply on or before March 21, 1983.

SO ORDERED.

---

7. Given the local rule which terminates discovery nine months after the filing of a complaint, it would have been wiser and safer for counsel to have sought Court approval of plaintiff's "wait and see" approach in advance.