**Dorothy G. AMMLUNG, Administratrix of the Estate of Russell G. Ammlung, Jr., Deceased, Appellant in No. 73–1351**

v.

**CITY OF CHESTER et al.**

**Appeal of AMERICAN CIVIL LIBERTIES UNION in No. 73–1352.**

**Nos. 73–1351, 73–1352.**

United States Court of Appeals, Third Circuit.

Argued Nov. 29, 1973.

Decided March 28, 1974.

Larrick B. Stapleton, Philadelphia, Pa., for appellant in No. 73–1352.

Louis J. Sinatra, Arthur Levy, Levy & Levy, Chester, Pa., for City of Chester and others.

Michael T. McDonnell, Jr., McDonnell and McDonnell, Yeadon, Pa., for Dorothy G. Ammlung, Adm., etc.

Before ADAMS and ROSENN, Circuit Judges, and SHERIDAN, District Judge.

## OPINION OF THE COURT

SHERIDAN, District Judge.

Appellant, Dorothy Ammlung, the administratrix of her son's estate, brought this suit in the district court against appellees under 42 U.S.C.A. §§ 1983, 1985 and 1988, seeking damages and injunctive relief from various alleged unconstitutional actions. The case arises out of the incidents and circumstances surrounding the death on January 24, 1970, of Russell Ammlung, appellant's son. The facts, as set forth in the complaint, are as follows. Rusty, the decedent, age eighteen, attended a dance in the gymnasium of St. James High School in Chester, Pennsylvania, on the evening of January 23, 1970. Upon arrival at the dance Rusty checked his coat at the door. Pursuant to dance rules he removed his shoes in order to preserve the gymnasium floor. While attending the dance, at approximately 10:30 P.M., Rusty became ill and attempted to secure his coat from the cloakroom. Unable to locate his coat, he sat on the steps adjacent to the cloakroom. While sitting there, Rusty was confronted by defendant Platt, a Chester police officer on extra-duty. He had been summoned by a dance chaperone who had seen Rusty leave the gymnasium and proceed down the hall. Platt asked Rusty where his shoes were. Because of his illness, Rusty was unable to respond to the

question. Whereupon, Platt, observing that Rusty was in an uncomprehending state and unable to communicate, arrested him without a warrant and charged him with "underage drinking," allegedly on the basis that he had the odor of alcohol on his breath. Platt summoned defendants Friel and Brown, two Chester police officers, who took Rusty into custody, removed him from the school without his coat and shoes, placed him in a police car, and drove him to the city jail.

Upon arrival at the Chester jail, Rusty was placed on the floor of a cell where he lay in a semiconscious state. The officers did not seek medical assistance for him, nor did they call his parents or attempt to advise him of his rights. Upon arrival for duty at the Chester jail, defendants Morgan and Dixon, also Chester police officers, observed Rusty in his cell and turned him over on his side, thus becoming aware of his condition. Throughout the night Rusty remained on the floor of the cell in a chilled state and without adequate clothing. Later that night, Officers Dixon and Morgan and Magistrate Lawrence, another defendant, poured water over Rusty in an unsuccessful attempt to revive him for arraignment. It is alleged that at this point Captain Welc of the Chester police department, another defendant, became aware of Rusty's condition.

At approximately 10:00 A. M. the following morning, a rattle was heard in Rusty's throat and the rescue squad was summoned to transport him to the Chester Crozier Medical Center. He was pronounced dead on arrival. An autopsy revealed that the cause of death was the aspiration of his own vomit and that there was no alcohol in his blood.

As a result of her son's death, appellant filed two suits in the Court of Common Pleas of Delaware County. The first suit, a wrongful death and survival action, was filed against the City of Chester, Magistrate Lawrence, Captain Welc, Sergeant Morgan and Officers Dixon, Platt, Friel and Brown. After the court sustained defendants' preliminary objections on state immunity grounds, appellant filed an amended complaint. The court sustained preliminary objections to the amended complaint. On appeal the Pennsylvania Superior Court, holding that persons having custody by law of an incapacitated prisoner are not immune as employees of the state from liability for his death caused by their wanton conduct, reversed and remanded the case for trial. Ammlung v. City of Chester, 1973, 224 Pa.Super. 47, 302 A.2d 491.

A second state wrongful death and survival action was filed by appellant against the Mayor of Chester and the Chief of Police. After sustaining defendants' preliminary objections on state immunity grounds and granting appellant leave to file an amended complaint, the court dismissed appellant's action when she failed to amend. No appeal was taken from this dismissal. In both state suits, defendants' liability was predicated on state law sounding in tort.

On May 2, 1972, appellant filed this federal civil rights action alleging the following violations of Rusty's civil rights: illegal arrest, false imprisonment, illegal search and seizure, assault and battery, criminal negligence, cruel and unusual punishment, and due process violations arising from the failure to advise decedent of his constitutional rights. In addition, appellant asserted her state wrongful death and survival actions as pendent claims.

Defendants filed a motion to dismiss the complaint for failure to state a cause of action, citing immunity under the Civil Rights Act, the statute of limitations, and res judicata. The district court granted defendants' motion to dismiss on the ground that the action was barred by the statute of limitations.[1]

1. The district court dismissed the action as to the City of Chester on the ground that the city is immune from suit under the Civil Rights Act; as to Mayor Narcelli and Chief of Police Bail on the ground that the principle of respondeat superior is inapplicable in

**814**

Appellant appeals from this dismissal. We affirm.

 Since there is no federal statute of limitations with respect to civil rights actions arising under 42 U.S.C.A. § 1983, the court below properly held that the Pennsylvania statute of limitations for analogous actions should be applied. O'Sullivan v. Felix, 1914, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; Hileman v. Knable, 3 Cir. 1968, 391 F.2d 596; Henig v. Odorioso, 3 Cir. 1967, 385 F.2d 491, cert. denied, 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166, rehearing denied 1968, 391 U.S. 929, 88 S.Ct. 1814, 20 L.Ed.2d 671; Hughes v. Smith, D. N.J. 1967, 264 F.Supp. 767, aff'd 3 Cir. 1968, 389 F.2d 42. The limitation period to be applied is that which the state would apply if the action had been brought in a court of that state. Funk v. Cable, M.D.Pa.1966, 251 F.Supp. 598, 599. There being no Pennsylvania statute of limitations of general applicability to actions involving invasions of constitutional rights, the applicable statute of limitations must be determined from the nature of the conduct alleged. Conard v. Stitzel, E.D.Pa.1963, 225 F.Supp. 244, 247. Accordingly, the district court properly held that the relevant state statutes of limitations are as follows: Wrongful Death, limitation of one year after death, 12 P.S. § 1603; False Arrest, one-year limitation period, 12 P.S. § 51; and Trespass Action, two-year limitation period, 12 P.S. § 31. All of the incidents of which appellant complains occurred on January 23, 1970, and the present civil rights action was not filed until May 2, 1972, which is beyond the limits prescribed by both the one-year and two-year statutes.

 Appellant contends, however, that in an action to recover damages for personal injury or death arising out of a conspiracy, Pennsylvania would apply a six-year statute of limitations, and therefore the six-year limitation period is applicable to this civil rights action. Appellees contend that the nature of the tortious conduct underlying the conspiracy determines which statute of limitations is applicable. We hold that appellant's complaint does not plead conspiracy. Indeed, appellant raised her conspiracy argument for the first time on appeal. It is too late in the judicial process for appellant to attempt to recast either the facts or the underlying basis of her complaint. A civil conspiracy is a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose. Landau v. Western Pennsylvania National Bank, 1971, 445 Pa. 217, 224, 282 A.2d 335. Examining appellant's complaint in light of this definition, it becomes readily apparent that there was no intelligible attempt to plead conspiracy. There are no allegations of a combination, agreement, or understanding among all or between any of the defendants. There are no factual allegations that the defendants plotted, planned, or conspired together to carry out the alleged chain of events which led to Rusty's death. The complaint does not sound in conspiracy. Moreover, even if the plaintiff had pleaded conspiracy, this action would still be barred by the statute of limitations. The Pennsylvania statute of limitations pertaining to the substantive offense most closely related to that which the defendants were alleged to have conspired to commit would govern. Auld v. Mobay Chemical Co., W.D.Pa.1969, 300 F.Supp. 138; Gaito v. Strauss, W.D.Pa. 1966, 249 F.Supp. 923, aff'd 3 Cir. 1966, 368 F.2d 787; see Jones v. Bombeck, 3 Cir. 1967, 375 F.2d 737. Under Pennsylvania law, the statute of limitations with

civil rights actions; and the cause of action based on 42 U.S.C.A. § 1985(3) on the ground that none of the requisite elements of a Section 1985(3) action had been pleaded. The court held that 42 U.S.C.A. § 1988 does not create an independent cause of action but rather authorizes, in civil rights

cases, resort to remedies and procedures of the state and the common law where those of federal law are inadequate.

Since we consider this action barred by the statute of limitations, we do not reach any of the issues involved in these dismissals on other grounds by the district court.

respect to a conspiracy begins to run from each overt act causing damage. Auld v. Mobay Chemical Co., supra. Since all the acts complained of by appellant occurred more than two years before the filing of this civil rights action, the relevant one-year and two-year state limitation provisions which apply to the substantive offenses would still bar this action even if conspiracy had been pleaded. We therefore hold that the district court applied the proper statutes of limitations.

■■■ There remains the issue of whether the pendency of the prior state actions tolled the statutes of limitations. State law governs the question whether an applicable state statute of limitations is tolled in an action brought under the federal Civil Rights Act, 42 U.S.C.A. § 1983. Duncan v. Nelson, 7 Cir. 1972, 466 F.2d 939; Jones v. Bombeck, 3 Cir. 1967, 375 F.2d 737; Hughes v. Smith, D.N.J.1967, 264 F.Supp. 767, aff'd, 3 Cir. 1967, 389 F.2d 42. Burnett v. New York Central Railroad Co., 1965, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941, relied on by appellant, is not authority for the proposition that the federal courts have a duty to fashion a federal tolling rule in civil rights actions arising under Section 1983. In Burnett, the Supreme Court held that a timely action under the Federal Employers' Liability Act in a state court, even though venue was improper, tolled the statute of limitations contained in that federal act. Unlike Burnett, the instant case is one in which state limitation provisions govern. Furthermore, the primary underpinning of Burnett, that a federal tolling principle was necessary to implement a national policy of uniform time bar clearly expressed by Congress when it enacted the FELA limitations provision, is absent here.

The instant case is governed by Auto Workers v. Hoosier Cardinal Corp., 1966, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192. In that case, in the absence of a federal limitations provision, the Supreme Court held that the applicable state statute of limitations was not tolled by prior state litigation involving the same dispute. The Court refused to fashion a federal tolling principle. In that case petitioner union had filed an action in state court to recover accumulated vacation pay allegedly due under the terms of a collective bargaining agreement. After dismissal of the complaint on the ground that it was insufficient under state law, the union thereafter brought an action in federal court under Section 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185. In affirming the district court's dismissal of the action on the ground that it was barred by the applicable state limitation provisions, the Court stated that the state statute of limitations governed in the absence of any federal limitation period and held that there was no federal tolling principle that would save the action. We hold that Hoosier, and not Burnett, controls in the instant case.

Appellant also relies on Mizell v. North Broward Hospital District, 5 Cir. 1970, 427 F.2d 468, for the proposition that a federal rule on tolling the applicable state statute of limitations should be observed in cases arising under the Civil Rights Act. In Mizell, plaintiff, a surgeon, had his surgical privileges suspended by the defendant hospital district. After invoking prescribed state administrative remedies without success and appealing unsuccessfully to the state courts, plaintiff filed a civil rights action in federal court under 42 U.S.C.A. §§ 1981, 1983 and 1985. In reversing the district court which had dismissed the complaint as barred by the state statute of limitations, the Court of Appeals for the Fifth Circuit held that the applicable state limitation provision was tolled by plaintiff's administrative efforts and state litigation. The court reasoned that it is within the underlying purpose of the Civil Rights Act to encourage utilization of state administrative and court procedures to vindicate alleged wrongs under state-created remedies before requiring plaintiff to bring his federal suit. Thus, the court held that a federal rule on tolling the state

statute of limitations should be observed.

We believe *Mizell* should be limited to the peculiar facts of that case, involving as it did the utilization of state administrative procedures and the state courts to reinstate a privilege revoked by the state. *Mizell* is also distinguishable in that the plaintiff's success in having his surgical privileges reinstated at the state level would have obviated the need for a federal civil rights action. In the instant case, plaintiff is entitled to recover in both the state wrongful death and survival actions and in the federal civil rights action, the state and federal causes of action having separate and distinct bases for recovery. The principle of federalism which underlies the court's opinion in *Mizell*, 427 F.2d at 474, requires a different approach here where the utilization of state administrative and state court procedures could not completely vindicate the alleged wrongs, particularly the alleged violations of constitutional rights. Furthermore, given the absence of a federal limitation period in the Civil Rights Act, the court has no basis for fashioning federal tolling principles, and due regard for our system of federalism requires that state concepts of tolling be applied to state statutes of limitations. Therefore, to the extent *Mizell* stands for the general proposition that a federal rule on tolling state statutes of limitations should be formulated and applied in civil rights cases, we decline to follow that decision. Such a principle would be in conflict with Auto Workers v. Hoosier Cardinal Corp., 1966, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192. Moreover, *Mizell* may no longer be sound law in the Fifth Circuit. The court in Blair v. Page Aircraft Maintenance, Inc., 5 Cir. 1972, 467 F.2d 815, refused to fashion a federal tolling rule and relied on the limitation period and tolling principles prescribed by the state.[2]

We hold that state tolling principles govern the tolling of the applicable state statutes of limitations in federal civil rights actions arising under 42 U.S.C.A. § 1983.

The district court rejected appellant's contention that the applicable state statutes of limitations were tolled by the commencement of the state suits, citing the absence of an applicable Pennsylvania tolling provision. We agree. The running of a Pennsylvania statute of limitations against a federal cause of action is not tolled under Pennsylvania concepts of tolling by the commencement of a similar suit in state court. Falsetti v. Local Union No. 2026, UMW, 3 Cir. 1966, 355 F.2d 658, aff'g W.D.Pa.1965, 249 F.Supp. 970; Falsetti v. Local Union No. 2026, UMW, W.D.Pa.1964, 34 F.R.D. 461; Di Sabatino v. Mertz, M.D. Pa.1949, 82 F.Supp. 248, 249; *cf.* Spees v. Boggs, 1903, 204 Pa. 504, 54 A. 346. Furthermore, the state and federal suits in the instant case are not similar causes of action. As noted before, the state wrongful death and survival actions and the federal civil rights action have independent and separate bases for recovery. Success or failure in one would not affect in any way the right of recovery in the other. Therefore, appellant's state litigation cannot justify her delay in bringing this federal civil rights action.

Since the federal civil rights action is barred by the statute of limitations, the district court properly dismissed the pendent state claims.

". . . It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal

2. "Mizell is overruled sub silentio by failing to consider its application to the facts of the case. The purpose of the state limitational statute rather than the purpose of the *federal substantive statute* is given as to touchstone for the decision whether or not to toll the limitation period." 467 F.2d at 821. (Tuttle, J., dissenting). Judge Tuttle wrote the court's opinion in *Mizell* while Judge Coleman, who had written a vigorous dissent in *Mizell*, wrote the court's opinion in *Blair*.

court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. . . ." (Footnotes omitted.) United Mine Workers of America v. Gibbs, 1966, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L.Ed.2d 218.

There is one collateral issue remaining. This involves the appeal of the American Civil Liberties Union from an order of the district court denying its petition to intervene as amicus curiae.[3] The A.C.L.U. concedes that it is not a party in interest and that the proposed intervention was entirely within the sound discretion of the district court. However, it contends that the district court dismissed the complaint without exercising its discretion on the request to intervene as amicus curiae. Having dismissed the complaint, the district court then denied the intervention on the ground the action had been dismissed. Thus, appellant contends that the district court improperly failed to exercise any discretion on the merits of intervention.

The district court should have exercised its discretion on the merits of intervention before ruling on the motion to dismiss. Since this is essentially a private action rather than one involving public rights, and since the A.C.L.U.'s participation has been that of a vigorous adversary to the defendants in this case, it clearly would have been within the discretion of the district court to deny the proposed intervention. *Cf.* United States v. Loew's Inc., S.D.N.Y.1957, 20 F.R.D. 423. We therefore affirm the denial of the request to intervene, but note that with respect to future petitions to intervene as amicus curiae, the district court should rule on the petitions and state the reasons for its ruling before adjudicating the substantive issues.

The order of the district court dismissing the action and the order denying the requested intervention will be affirmed.

---

3. The A.C.L.U.'s "Petition For Leave To Intervene As Amicus Curiae" was *solely* a request to appear and be heard as an amicus; it was *not* a request to intervene as a party in interest under Rule 24 of the Federal Rules of Civil Procedure. Thus the "intervention" involved in this case and discussed herein pertains solely to the intervention as *amicus curiae,* i. e., leave to appear and be heard as an amicus. It does not involve in any way intervention under Rule 24.