**Dr. Jay SMITH, Plaintiff,**

v.

**Joseph A. WAMBAUGH, Defendant.**

No. 1:CV–94–1470.

United States District Court,
M.D. Pennsylvania.

Dec. 8, 1998.

Supplemental Order Dec. 17, 1998.

George Bochetto, Bochetto & Lentz, Philadelphia, PA, for Plaintiff.

John Havas, Reynolds & Havas, Harrisburg, PA, Mark R. Hornak, Buchanan Ingersoll Professional Corporation, Pittsburgh, PA, for Defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On September 14, 1994, plaintiff Jay C. Smith, D.Ed., commenced this action with the filing of a complaint under 42 U.S.C. § 1983 alleging that defendant Joseph P. Wambaugh conspired with police and prosecutors to deprive Smith of his rights under the Fourth, Sixth, and Fourteenth Amendments (Count I). The complaint also sets forth claims under state law for conspiracy (Count II) and abuse of process (Count III). The object of the conspiracy under Count II was the abuse of process alleged under Count III. Counts II and III were dismissed by the court on May 15, 1995. The denial of the motion to dismiss as it related to Count I was appealed to the Third Circuit, which affirmed.

Before the court are Wambaugh's motion for summary judgment, Wambaugh's motion in limine to strike Smith's expert report, and Smith's motion in limine to preclude the use of conviction evidence at trial.

### DISCUSSION:

#### I. STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex* at 323, 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson* at 248, 106 S.Ct. 2505. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988).

## II. NATURE OF CLAIM

The parties dispute the nature of the claim and the type of proof which is required. Wambaugh contends that Smith has alleged a claim of conspiracy under § 1983, while Smith contends that he must only prove some form of concerted activity. Actually, Wambaugh correctly states that the complaint alleges a conspiracy, *see, e.g.,* Complaint at 16 ¶¶ 70–72 (all referring to a conspiracy or conspirators), while Smith correctly notes that the complaint need not be so limited. *See esp.* Complaint at 2 ¶ 3 (referring to defendant "acting in concert with, and with the aid, assistance and encouragement of state officials ..."). The motion for summary judgment, reduced to its essence, is limited to the question of whether Wambaugh may be considered a state actor for purposes of § 1983.

In fact, disputes about opinions and conclusions appear throughout the documents related to the motion for summary judgment. Wambaugh refers to the characterizations of the conduct of individuals involved in the criminal proceedings by such persons as Smith's defense attorney and internal investigators for the Pennsylvania State Police. These opinions have no bearing on the legal question of whether Smith has produced sufficient evidence for a jury to conclude that Wambaugh was a state actor.

For his part, Smith provides the opinion of a purported expert who opines that the conduct of a state trooper in this case amounts to Fascism.[1] We disagree.

Also, Smith devotes an entire section of his brief in opposition to the motion for summary judgment to "The Red Herring (Defendant's Migration Theory)." Plaintiff's Brief at 26–28. Actually, the theory is Smith's. Complaint at 16–17 ¶¶ 72–74.

So that the motion may be addressed properly, we will first review the law of liability on the part of private persons as joint actors and co-conspirators under § 1983, and then will address the evidence as it relates to each potential theory of liability (sometimes referred to as factors to be considered in determining liability). Because of this methodology, we do not find it necessary to address each fact asserted or controverted by the parties, but will limit ourselves to those facts specifically relevant in the context of each theory. To place the analysis into context, a brief factual overview is provided. A more

---

1. The court recognizes that it is being somewhat glib in referring to this opinion. The opinion deserves no better treatment, and will be discussed no further. Since the motion for summary judgment will be granted, the motion to strike this expert report will be denied as moot. We note, however, that the opinion is not such as would be admitted into evidence at trial.

detailed recitation of the facts may be gleaned from the many opinions which have been published in proceedings related to this notorious case. *See, e.g., Commonwealth v. Smith,* 523 Pa. 577, 568 A.2d 600 (1989) (vacating Smith's conviction); *Commonwealth v. Smith,* 404 Pa.Super. 553, 591 A.2d 730 (1991) (re-trial not barred by Double Jeopardy Clause); *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992) (reversing previously cited opinion and holding that Double Jeopardy Clause barred re-trial due to prosecutorial misconduct); *Smith v. Wambaugh,* 22 Pa. D. & C.4th 219 (Pa.Com.Pl. Huntingdon 1993), *aff'd,* 440 Pa.Super. 640, 654 A.2d 606 (1994) (table), *allocatur denied,* 540 Pa. 641, 659 A.2d 560 (1995) (table); *Smith v. Holtz,* 856 F.Supp. 227 (M.D.Pa. 1994), *reconsideration denied,* 879 F.Supp. 435 (M.D.Pa.1995), *aff'd,* 87 F.3d 108 (3d Cir.), *cert. denied sub nom. Wambaugh v. Smith,* — U.S. —, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996); *Smith v. Wambaugh,* 887 F.Supp. 752 (M.D.Pa.1995), *aff'd sub nom. Smith v. Holtz,* 87 F.3d 108 (3d Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996).

### III. FACTUAL SUMMARY

On Monday, June 25, 1979, the body of Susan Reinert, an English teacher at the Upper Merion High School, was discovered outside the Host Inn in Swatara Township, Dauphin County, Pennsylvania. The body showed evidence that Ms. Reinert had been chained and beaten, and her nude body was left lying in the fetal position in the back of her car, with the hatchback open. The cause of death was determined to be asphyxiation from an overdose of morphine. Susan Reinert was last seen alive the preceding Friday leaving her home with her children, Karen and Michael. The children were never seen again, and are presumed dead.[2]

The chief investigator in the case during its initial stages was Joseph Van Nort, a criminal investigator with the Pennsylvania State Police. The case received a great deal of publicity due to the lurid details which came to light. Those details need not be repeated here. Eventually, a fellow teacher in the English department at Upper Merion, William S. Bradfield, was arrested for the murder. Bradfield was the named beneficiary of Susan Reinert's will and life insurance policies. He was tried and convicted of the murders, and sentenced to life in prison. He died there earlier this year.

In 1986, Jay C. Smith, a former principal at Upper Merion, was arrested for the murders, tried, convicted, and sentenced to death. At the time of his arrest, Smith had been serving a sentence for robberies. In 1989, the conviction and sentence were overturned by the Supreme Court of Pennsylvania, which found error in the admission of statements by Bradfield which constituted hearsay. After further proceedings, the Supreme Court found that prosecutorial misconduct related to newly discovered evidence barred a second trial.

During the early stages of the criminal investigation, Susan Reinert's ex-husband sent newspaper clippings to defendant Joseph Wambaugh, an author who specializes in true crime books and fictional stories involving police. Wambaugh himself is a former policeman. Wambaugh became interested in the story and contacted Van Nort about the possibility of a book. He offered $50,000.00 to Van Nort for a personal depiction waiver, which would release Wambaugh from liability for the manner in which Van Nort was portrayed. Van Nort died before any payment was made or waiver executed.

Van Nort's partner, John (Jack) Holtz became the lead investigator and found a letter from Wambaugh to Van Nort which outlined their agreement. Holtz later entered into an identical agreement with Wambaugh and received the $50,000.00. It is the agreement and related payment which is the basis for

---

**2.** Recent news reports indicate that there may be a clue to the whereabouts of the bodies of Karen and Michael Reinert. A 1986 photograph has been found among William Bradfield's belongings which shows a stone marker in a wooded area. The Pennsylvania State Police are investigating but are unsure of the significance of the marker. *Reinert evidence revealed,* The Harrisburg Patriot, November 18, 1998, at Al, 1998 WL 6486656. Neither the marker nor any other evidence of bodies has been located.

Smith's current contention that Wambaugh was a state actor for purposes of § 1983.

## IV. LIABILITY OF PRIVATE PERSONS

The question presented is whether there is evidence sufficient to support a finding of liability on the part of Wambaugh under § 1983. Wambaugh clearly is not a state official or employee, and therefore some conduct by which private persons may be said to act under color of state law must have occurred. That is, some manner of establishing that Wambaugh engaged in "state action" despite being a private party must be reflected in the record.

■ As the Third Circuit recently noted, no clear standard or test for state action has been established by the Supreme Court of the United States. Rather, the question depends upon an inquiry into the factual scenario in which the controversy arises. *Sullivan v. Barnett*, 139 F.3d 158, 167 (3d Cir.), *cert. granted sub nom. American Manufacturers Mutual Insurance Co. v. Sullivan*, —— U.S. ——, 119 S.Ct. 29, 141 L.Ed.2d 789 (1998). Some of the tests used, or factors considered, to determine state action include: whether the state has coerced or provided substantial encouragement for the action, *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); whether there is a symbiotic relationship between the state and the private actor, *Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); whether the private actor exercises powers exclusively within the prerogative of the state, *Flagg Brothers v. Brooks*, 436 U.S. 149, 157–159, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); whether there is a "sufficiently close nexus" between the state and a private actor, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). *See also Sullivan* at 170 (summarizing foregoing cases). Of course, a finding that a private party acted in a conspiracy with state officials would satisfy several of these tests, and so it is not surprising that a private party acting in a conspiracy with state officials may be liable as a state actor. *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir.1990) (citing, *inter alia, Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66

L.Ed.2d 185 (1980)), *aff'd*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). *See also Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir.1998) (federal actors subject to § 1983 liability when acting in conspiracy with state officials). We will examine the facts of this case to determine whether any of these tests or theories of liability is applicable.

### (A) Coercion/Substantial Encouragement

Smith neither alleges nor argues that coercion and substantial encouragement apply, as it is the allegedly unconstitutional conduct of the state officials, not Wambaugh, which is at issue. That is, the concept of state officials coercing or encouraging Wambaugh to take action is inapplicable under the circumstances presented.

### (B) Symbiotic Relationship

The symbiotic relationship described in *Rendell–Baker* derives from *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), in which a restaurant within a garage on public property refused to serve Black ("Negro," in the language of the day) customers. Since the garage was supported in part by rent derived from the restaurant's profits, the state profited from the discrimination. No similar symbiotic relationship between Wambaugh and Pennsylvania exists in this case.

### (C) State's Exclusive Prerogative

Wambaugh is not alleged to have performed any action which is within the exclusive prerogative of the state. In fact, it is the state officials who undertook the conduct at issue, i.e. the arrest and prosecution of Smith. Again, this test is inapplicable in the context of the facts under review.

### (D) Close Nexus

In *Jackson*, the Supreme Court discussed whether there was a sufficiently "close nexus" between the state and a closely regulated but private utility company. Since the provision of utilities is not traditionally associated with sovereignty, and the state took no more action than to permit certain practices, that is, allowed the company to function in the same manner as other corporations, there was not a sufficiently close nexus for the company's action in terminating service for

non-payment to be considered state action. *Jackson* at 350–353, 358, 95 S.Ct. 449. No similar circumstances exist in this case, and again the concept simply is inapplicable.

### (E) Joint Action/Conspiracy

■ Finally, we turn to the concept of a private party's liability for acting in concert with or engaging in a conspiracy with state actors. The Supreme court in *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), described the concept as follows:

As the Court of Appeals correctly understood our cases to hold, to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.... Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge. But here the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge. Under these allegations, the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability. Immunity does not change the character of the judge's action or that of his co-conspirators. Indeed, his immunity is dependent on the challenged conduct being an official judicial act within his statutory jurisdiction, broadly construed.... Private parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of § 1983 as it has been construed in our prior cases. The complaint in this case was not defective for failure to allege that the private defendants were acting under color of state law, and the Court of

Appeals was correct in rejecting its prior case authority to the contrary. *Dennis* at 27–29, 101 S.Ct. 183 (citations, footnotes omitted). One of the footnotes omitted from this passage quotes *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), to the effect that private persons jointly engaged with state officials in a prohibited action may be liable so long as the private person is a "willful participant" in the joint activity with the state or its agents. *Dennis* at 28 n. 4, 101 S.Ct. 183. We think it evident, then, that a private party may be liable under § 1983 when (1) the party actually participates with state officials in an activity which is constitutionally prohibited, or (2) the private party conspires with state officials to violate the Constitution.

Smith relies on *Berger v. Hanlon*, 129 F.3d 505 (9th Cir.1997), *cert. granted*, —— U.S. ——, 119 S.Ct. 443, —— L.Ed.2d —— (1998),[3] for the proposition that a conspiracy is unnecessary for a private party to engage in state action. We agree with that general proposition, but find that *Berger* is inapposite.

We note initially that we have recited above a number of ways in which a private party may be found to have engaged in state action without proof of a conspiracy. There is no inconsistency, then, between Smith's argument and our conclusion. However, Smith further argues that Wambaugh should be found to have engaged in state action because he acted in the same manner in which the media defendants in *Berger* acted. Actually, there is a big difference and it is in the difference that Smith's argument fails.

In *Berger*, the United States Fish and Wildlife Service commenced an investigation into allegations that Berger had poisoned or shot eagles. Employees of CNN and TBS learned of the investigation and contacted agents of the Fish and Wildlife Service to work out a deal for television coverage. In the end, CNN and TBS reached an agreement with the U.S. Attorney's Office handling the case and the Fish and Wildlife

**3.** Certiorari was granted on the issue of police liability when they allow the media to participate in a search, not the opposite as in this case.

Service whereby CNN accompanied agents on a search of Berger's property, equipping government vehicles with cameras and a Fish and Wildlife agent with a microphone and tape recorder. The Ninth Circuit summarized the activities of the government and the media as follows:

> This was no ordinary search. It was jointly planned by law enforcement officials and the media, as memorialized by a written contract, so that the officials could assist in the media obtaining material for their commercial programming. The television cameras invaded the residential property of the plaintiffs and the microphone invaded their home. This search stands out as one that at all times was intended to serve a major purpose other than law enforcement. Yet, the federal agents obtained the warrant without disclosing the contract, the planned press presence, or the media's purpose. . . .

*Berger* at 510.

■ In contrast, Wambaugh was in California during most of the time that the activities of which Smith complains occurred. To the extent that Wambaugh may have been present, there is no evidence that he actually participated in the activities. For instance, Smith complains of the suppression of certain allegedly exculpatory material during trial. There is no evidence that this material was in Wambaugh's possession, nor that he somehow hid it or directed that it be hidden. Rather, it was the state officials, i.e. the State Police and the prosecutors, who are properly the subject of the suppression allegations, since the uncontroverted evidence indicates that the material was in their possession, or at least that knowledge of the material's existence was theirs alone, not Wambaugh's. Unlike the media defendants in *Berger*, Wambaugh did not participate in joint activity with state officials, and in fact did not participate at all (alone or with others) in the specific conduct which constitutes the alleged unconstitutional action.

In short, we agree with Smith that a private party need not have been a co-conspirator to be liable under § 1983 for engaging in joint activity with state officials. We disagree, however, that the activity under consideration was joint activity as described in *Berger*. To this we add that Smith misconstrues the word "agreement" as used in *Dennis*: in the case of joint activity, the agreement would be the private party's willful participation in the activity, i.e. agreeing to do it, not an agreement to violate another person's constitutional rights, as in a conspiracy. Smith's contention that there need not be a conspiratorial agreement is misplaced in the context of an argument concerning joint activity.

We turn then to the question of whether there is sufficient evidence of record to establish that Wambaugh conspired with state officials to violate Smith's rights. Before doing so, we note that Wambaugh has moved to amend his answer to assert the affirmative defense of collateral estoppel, a motion which we have granted. We presume for present purposes that collateral estoppel does not bar Smith's claim based on the alleged suppression of two grains of sand found on the feet of Susan Reinert's body, which Smith contends was *Brady* material unlawfully suppressed by the State Police and the prosecution during criminal proceedings. The finding by a jury in a separate action against state officials that the sand was not *Brady* material does not affect our analysis of the evidence of Wambaugh's participation in a conspiracy, and so we do not decide whether collateral estoppel, also known as issue preclusion, applies to bar Smith's claim in that regard. We also note that collateral estoppel would not bar Smith's claims related to other evidence as the jury verdict does not represent actual litigation of issues related to the other evidence.

In *Melo*, the Third Circuit indicated that it was assuming that the complaint alleged the prerequisites of a civil conspiracy. *Id.* at 638 n. 11. In so doing, it cited *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). That case provides in relevant part:

> A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit an unlawful act by unlawful means, the principal element of which is an agreement be-

tween the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.' " ... In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "circumstantial evidence may provide adequate proof of conspiracy." Absent the testimony of a coconspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist. Thus, the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can "infer from the circumstances that the alleged conspirators had a 'meeting of the minds' and thus reached an understanding" to achieve the conspiracy's objectives....

*Hampton* at 620–621 (citations, brackets omitted). Consistent with *Hampton* is the following summary of Third Circuit precedent provided by Judge Robreno of the Eastern District:

Agreement is the *sine qua non* of a conspiracy. As the Third Circuit has explained, to allege a civil conspiracy for purposes of § 1983, the plaintiff must aver "a combination of two or more persons to do [an unlawful or] criminal act, or to do [a][ ]lawful act by unlawful means or for an unlawful purpose." *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974). In other words, to state a claim for conspiracy under § 1983, plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." *Hammond*, 800 F.Supp. at 1249 (citing *Ammlung*, 494 F.2d at 814); *See also Gallas v. The Supreme Court of Pennsylvania*, Civ.A. No. 96–6450, slip op. at 36, 1997 WL 256972 (E.D.Pa. May 14, 1997) (Yohn, J.) (citing *Ammlung* ). It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. To state a claim for conspiracy under § 1983, plaintiff must claim that, "[t]he private actor ... wrong-

fully influence[d] the state [actor's] decision ... *through a conspiracy*, or else the plaintiff must seek his remedy in a state tort claim, not a federal § 1983 suit." *Davis v. Union National Bank*, 46 F.3d 24, 26 (7th Cir.1994) (emphasis added).

*Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D.Pa.1997) (emphasis, brackets in original; footnote omitted).

Smith points to no evidence that Wambaugh agreed with any state actor to deprive Smith of his civil rights, nor is there evidence that Wambaugh even knew that such an event might take place. Smith relies on the offer of $50,000.00 and argues that Wambaugh must have known that the police and prosecutors would do anything, including violate the law, to try to get a conviction, thereby ensuring that the book would be published and that they would appear favorably in the book. We disagree.

First of all, Bradfield was convicted for the murders some time before Smith, so that the story was completed to that extent. The letter from Wambaugh to Van Nort embodying the agreement specifically states that a conviction was not necessary before the book was published. No evidence supports the contention that the agreement was for a conviction of Smith.

As to the amount of money, which was rather large, the letter from Wambaugh to Van Nort itself explains the amount:

I have never envisioned spending the kind of money I'll have to spend on this case. I think all 65 witnesses to *The Onion Field* case cost me a total of $25,000.00. But that was a cold case long past. This one is current and hot which is why I'm offering you this kind of money....

Complaint, Exhibit N. In other words, a more valuable story was going to cost Wambaugh more money, hardly a shocking development.

In the end, Smith's arguments amount to an assertion that because Wambaugh offered money for a story, and the story would best end with a conviction, Wambaugh should be liable for alleged constitutional violations committed by state officials pursuing the convictions. In fact, in the summary portion of

Smith's brief, he characterizes the payment as a "bounty." We reject the characterization because (1) there is no evidence that Wambaugh led officials (actually, Holtz was the only state actor who knew of the agreement) to believe that a conviction was needed before a book would be written, and (2) there is no evidence that Wambaugh wanted constitutional violations to obtain a conviction.

Taking Smith's argument to its logical conclusion, if a police officer or prosecutor violates a suspect's or defendant's constitutional rights in a case in which a reward has been offered, the offeror of the reward is liable as a state actor for conduct which was neither sought nor anticipated. Obviously, we reject this reasoning.

## V. CONCLUSION

Smith offers no evidence which would support a theory of liability for a private actor under § 1983, nor do the factors discussed in opinions on the issue support Wambaugh's liability under § 1983. Wambaugh's motion for summary judgment will be granted, and the remaining motions will be denied as moot.

An order consistent with this memorandum will issue.

## ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Defendant Joseph P. Wambaugh's motion (record document no. 47) for summary judgment is granted.

2. The clerk is directed to enter judgment in favor of defendant and against plaintiff.

3. Defendant's motion (record document no. 56) to strike plaintiff's expert report is denied as moot.

4. Plaintiff Jay C. Smith's motion (record document no. 60) in limine regarding the use of conviction evidence is denied as moot.

5. The clerk is directed to close the file.

## ORDER

MCCLURE, District Judge.

### BACKGROUND:

On September 14, 1994, plaintiff Jay C. Smith, D.Ed., commenced this action with the filing of a complaint under 42 U.S.C. § 1983 alleging that defendant Joseph P. Wambaugh conspired with police and prosecutors to deprive Smith of his rights under the Fourth, Sixth, and Fourteenth Amendments (Count I). The complaint also sets forth claims under state law for conspiracy (Count II) and abuse of process (Count III). The object of the conspiracy under Count II was the abuse of process alleged under Count III. Counts II and III were dismissed by the court on May 15, 1995. On December 8, 1998, we granted summary judgment in favor of Wambaugh on the § 1983 claim.

### DISCUSSION:

In our memorandum related to the motion for summary judgment, we addressed at length the concept of a private individual's liability under § 1983 for acting in concert and/or conspiring with state actors in conduct amounting to a constitutional deprivation. Memorandum dated December 8, 1998, at 7–17. We found that there was no evidence that Wambaugh either acted in concert with state officials or conspired with state officials to deprive Smith of his constitutional rights.

Shortly after issuance of our decision, the Court of Appeals for the Third Circuit issued *Abbott v. Latshaw,* 164 F.3d 141, 1998 WL 877982, No. 97–3460 (3d Cir. filed December 11, 1998). *Abbott* is consistent with our holding, and we supplement our earlier memorandum to explain such and to distinguish the facts of *Abbott,* under which the private actor was held to be potentially liable.

The Third Circuit's opinion, *id.* at 145–147, recites the fact that Abbott was Latshaw's former husband. He bought a van from Latshaw's father, but the title certificate remained in the father's name because of a non-transferrable warranty. After the marriage ended, Latshaw's father signed the title certificate over to Latshaw, despite the fact that Abbott had paid for the van. Latshaw

then contacted a deputy constable and paid him $40.00 to help her to repossess the van.

When Latshaw and the constable appeared at Abbott's office (Latshaw showed the title certificate to the constable), Abbott explained that the van was his and that he had a bill of sale. The constable would not allow Abbott to drive the van home to get the bill of sale, specifically stating that he would not allow Abbott to drive "her [Latshaw's] vehicle." Abbott called the attorney who represented him in the sales transaction, and the attorney told the constable that the bill of sale existed and warned the constable that he would be liable for taking the van.

The constable then called police for the purpose of reviewing Latshaw's documentation. They confirmed that Latshaw had title to the car. One officer supported the constable's conclusion that Latshaw was entitled to immediate possession of the van.

Abbott's then-current counsel arrived on the scene and parked his car so as to block egress of the van. A locksmith arrived and cut a key to the van for Latshaw. The attorney was arrested, detained briefly in a squad car, and issued a summary citation for disorderly conduct. Latshaw was able to maneuver the van out of a parking space and drove away.

Abbott commenced an action under § 1983, alleging deprivation of property without due process. Although the constable and police officers also were named as defendants, we limit our discussion to Latshaw, as only that part of the Third Circuit's discussion is relevant for present purposes. The district court, acting *sua sponte*, dismissed the claim against Latshaw because the complaint did not allege a conspiracy between Latshaw and the constable, and because the record did not support a basis for such an allegation. *Id.* at 148.

The Third Circuit pointed out, as did this court, that a private party may be liable under § 1983 for engaging in a conspiracy with state officials to deprive a person of a constitutional right. *Abbott* at 148; Memorandum of December 8, 1998, at 10–11. The

Third Circuit pointed out that the complaint contained allegations that the constable acted at the "instance and request" of Latshaw, so that Latshaw acted under color of state law. *Abbott* at 148. Also, "the complaint depicted joint action by Latshaw and [the constable] in effectuating the recovery of the van." *Id.* These allegations were sufficient. *Id.* at 148. The Third Circuit added:

> Further, we find the court's conclusion that the record contained no facts which could support a conspiracy allegation to have been premature—since no motion for summary judgment had been filed—but also curious in light of the facts borne out by the evidence, including Latshaw's statement under oath that she contacted [the constable] and that she paid him to help her take possession of the van.

*Id.* The dismissal therefore was reversed.

In our earlier memorandum, we distinguished this case from *Berger v. Hanlon,* 129 F.3d 505 (9th Cir.1997), *cert. granted,* —— U.S. ——, 119 S.Ct. 443, —— L.Ed.2d —— (1998). In that case, the private parties had acted in concert with federal agents conducting a search of private property pursuant to a search warrant. The Ninth Circuit held that the private parties could be liable because they acted in concert with law enforcement. We held that there was no evidence that Wambaugh actually participated in the conduct at issue in this case, so that he cannot be said to have engaged in joint activity with state officials, and *Berger* does not apply. Memorandum of December 8, 1998, at 12–13.

For the same reasons, *Abbott* does not apply. Unlike Latshaw, Wambaugh was not physically present at the time that the alleged deprivations took place, nor is there evidence that Wambaugh conspired with state officials to deprive Smith of any constitutional right. Like Latshaw, Wambaugh paid a state official (Wambaugh's payment of $50,000.00 was considerably more than Latshaw's $40.00), but the payment by Wambaugh was for a story and a "personal depiction waiver." Because of the circumstances (prior suits against Wambaugh and the currency of the story), the payment by

Wambaugh was reasonable and gave rise to no reasonable inference that the payment was any more than it was purported to be.

For all of these reasons, then, we find that the Third Circuit's opinion in *Abbott* does not affect our prior conclusion, and in fact recites the law in a manner consistent with our opinion.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. This order shall supplement our Memorandum and Order of Court dated December 8, 1998.

2. The parties are noticed of the issuance of *Abbott v. Latshaw,* 164 F.3d 141 (3rd Cir.1998), for purposes of any potential appeal of this matter.