NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1476
_____

ANGELA ROBINSON; JOHNNY ROBINSON,
Individually and as the Parents of the Minor Plaintiff; J. R.

Appellants

v.

ERIC HICKS; TINA KING; CITY OF HARRISBURG;
SHARON BOLOGNESE; CPYSL
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-07-cv-01751)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 19, 2011

Before:  FISHER, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed:  November 8, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Angela  Robinson and Johnny Robinson ("the Robinsons"), individually and as the

parents of their minor daughter J.R., appeal the District Court's decision to grant the

Defendants' motions for summary judgment. For the following reasons, we will affirm the District Court.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

J.R., the daughter of Angela Robinson, who is Caucasian, and Johnny Robinson, who is African-American, played soccer for the Harrisburg Youth Soccer Club ("HYSC"),[1] a travel soccer program associated with the Central Pennsylvania Youth Soccer League ("CPYSL"), as well as for an in-house soccer program affiliated with the Eastern Pennsylvania Youth Soccer Association ("EPYSA"). Both soccer programs were run by the City of Harrisburg. In April 2007, Eric Hicks ("Hicks"), the president of HYSC,[2] was addressing J.R.'s in-house soccer team, which is composed of mostly non-white players, when he said they were going to "kick those white girls' butts." Johnny Robinson believes that Hicks told the players not to tell their parents about what occurred during these meetings. The Robinsons complained to Hicks about the comment. When they did not feel satisfied with Hicks's response, they contacted Tina King ("King"), who

---

[1] Parties also refer to the Harrisburg Youth Soccer Club as the Harrisburg Soccer Club, and the Harrisburg Soccer League.

[2] The parties refer to Hicks as the soccer coach although that was not his official position. As HYSC president, he coordinated and implemented the soccer program.

2

supervised Hicks's immediate supervisor and was the Director of the Department of Parks and Recreation for the City of Harrisburg. Angela Robinson sent King various emails expressing her disapproval of Hicks's comments and demanded a new coach. The Robinsons eventually approached Sharon Bolognese ("Bolognese"), the President of CPYSL, to complain about the incident.

On August 10, 2007, the HYSC Board of Directors unanimously voted to suspend the three Robinsons from HYSC for one year because Angela and Johnny had allegedly engaged in inappropriate behavior, such as using profanity and threats with the staff and players. On September 26, 2007, the Robinsons were given a hearing to present evidence in support of their appeal, but the Board of Directors for the HYSC voted to uphold the suspension and increased the suspension period to two years due to the Robinsons' hostile and aggressive behavior at the hearing. The Robinsons appealed the suspension decision to the EPYSA arbitration panel, which upheld the Board's decision on December 11, 2007.

On September 26, 2007, the Robinsons filed a complaint against King, the City of Harrisburg, Hicks, CPYSL, and Bolognese ("the Defendants") in the United States District Court for the Middle District of Pennsylvania. The Defendants filed motions for summary judgment on August 3, 2010. On February 1, 2011, the District Court adopted Magistrate Judge William T. Prince's December 2, 2010 Report and Recommendation

("R&R") and granted the Defendants' motions for summary judgment. The Robinsons filed a timely appeal.

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and apply "the same standard that guides our district courts." *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (citation omitted). Summary judgment is appropriate if, "viewing the facts in a light most favorable to the nonmoving party," there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)).

## III.

### A.

The Robinsons argue that the District Court did not conduct a proper review of Magistrate Judge William T. Prince's R&R. The District Court must conduct a de novo review of the portions of the R&R to which objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The District Court granted the motion for summary judgment after conducting "an independent review of the record and noting that [the Robinsons] filed objections to the [Magistrate Judge's] report." *Robinson v. Hicks*,

4

No. 1:07-Civ-1751, 2011 WL 398035, at *1 (M.D. Pa. Feb. 1, 2011) (unpublished decision). It adopted the Magistrate Judge's R&R because Judge Prince's analysis was "thorough and well-reasoned" and the District Court found the Robinsons' "objections to be without merit and squarely addressed by Judge Prince's Report and Recommendation." *Id.* Thus, the District Court did not err because it properly engaged in a de novo review of the R&R, which it had the authority to adopt in its entirety.

B.

The Robinsons argue that the District Court erred in granting the Defendants' motions for summary judgment as to their First Amendment claim because the Defendants retaliated against the Robinsons for speaking out against Hicks and the soccer program. We disagree. To state a claim for actionable retaliation under the First Amendment, the Robinsons must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp*., 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted).

The District Court did not err in granting the summary judgment motion in favor of Bolognese and CPYSL. Even if the Robinsons' objection to Hicks's comments were considered constitutionally protected conduct and they were suspended from the soccer team in retaliation, there is insufficient evidence that Bolognese and CPYSL participated

5

in the retaliatory conduct to subject them to liability. The Robinsons point to email correspondence between Bolognese and King regarding Bolognese's communication with Angela Robinson and the Robinsons' appeal of the suspension decision. However, this correspondence does not indicate that Bolognese or CPYSL participated in the suspension decision, which was made by HYSC and upheld on appeal by EPYSA.

Granting the summary judgment motion in favor of Hicks, King, and the City of Harrisburg with respect to the First Amendment claim was also proper because their actions were shielded by qualified immunity. Whether a defendant is entitled to qualified immunity depends upon (1) whether the facts as alleged in the complaint make out a violation of a constitutional right and (2) whether "the right was clearly established . . . in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity shields an official from suit if he could have reasonably believed that the actions in question were lawful in light of clearly established law and the information the official possessed at the time. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). "In the context of a First Amendment retaliation claim, that determination turns on an inquiry into whether officials reasonably could believe that their motivations were proper even when their motivations were in fact retaliatory." *Larsen v. Senate of Commonwealth of Pa.*, 154 F.3d 82, 94 (3d Cir. 1998). Thus, if "the legitimate basis for the [defendants'] actions [is] so apparent" that they "would have been compelled to reach

the same decision even without regard for the protected First Amendment activity," the defendants may be entitled to qualified immunity. *Id.* at 95.

Given the history of the Robinsons' aggressive and disruptive behavior, the decision to suspend them from the soccer team would have been the same even without the exercise of their First Amendment rights. The testimony of a prior coach, Paul L. Byers, and the decision letter of the EPYSA Arbitration Committee affirming the suspension decision, describe several incidents where the Robinsons' use of insults, threats, and profanity towards other players and staff members would have justified the suspension decision, regardless of the Robinsons' objection to Hicks's comment. The Robinsons' bare allegations of retaliatory motive are insufficient to defeat qualified immunity. *See Larsen*, 154 F.3d at 95. Therefore, Hicks, King, and the City of Harrisburg are entitled to qualified immunity, and the District Court did not err in granting the motions for summary judgment for all Defendants with respect to the First Amendment claim.

## C.

The Robinsons argue that their 42 U.S.C. §§ 1981 and 1983 equal protection claims present genuine issues of material fact, so the Defendants' motion for summary judgment should have been denied. A § 1983 claim can be established only "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."

7

*Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citation omitted). A "course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of . . . officials [are] so permanent and well settled' as to virtually constitute law." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (second alteration in original) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). The Robinsons do not assert that there is an express, codified policy of racial animosity, but rather contend that there is a permanent and well settled practice of supporting racial animus and punishing those who speak out against the program. Other than the conclusory statement that there could be no other explanation for the soccer program's tolerance of Hicks's statement, the Robinsons fail to show any evidence to prove that such a custom exists. Thus, there are no genuine issues of material fact regarding the § 1983 equal protection claim, and the District Court properly granted summary judgment.

The Robinsons argue that under § 1981, they were discriminated against as a bi-racial family with respect to their right to contract with the CPYSL. To establish a prima facie § 1981 claim, the Robinsons must demonstrate "(1) that [they] belong[ ] to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) (internal quotation and citation omitted). Once

8

the plaintiffs establish a prima facie case, the "burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the [adverse action].'" *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis omitted) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Here, none of the Robinsons' evidence, including King's email correspondence, prove an intent to suspend the Robinsons based on their race. And even if the Robinsons were to establish a prima facie § 1981 claim, the Defendants have met their "relatively light burden" of showing that CPYSL entered the suspensions for legitimate, nondiscriminatory reasons. *Id.* Although the plaintiffs can rebut with a showing "by a preponderance of the evidence that the [defendants'] explanation is pretextual," *id.*, the Robinsons fail to put forth any evidence to show "weaknesses . . . or contradictions in the [Defendants'] proffered legitimate reasons for [their] action[s] that a reasonable factfinder could rationally find them unworthy of credence." *See id.* at 765 (internal quotation and citation omitted). The Robinsons' use of profanity, insults, and threats on at least five separate occasions provide legitimate, non-pretextual reasons for their suspension. Thus, summary judgment as to the Robinsons' § 1981 claim was proper.

D.

The Robinsons next argue that their suspension resulting from racial discrimination interfered with their right to participate in the CPYSL, which operates in multiple locations across the country, and thereby violated the Commerce Clause. To

9

establish a Commerce Clause violation, the Robinsons must prove that the Defendants engaged in a pattern or practice of discrimination against bi-racial families. *See* 42 U.S.C. § 2000a-5(a). The words "pattern or practice" mean "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). The Robinsons must show that "racial discrimination was the [Defendants'] standard operating procedure," the "regular rather than the unusual practice." *Id.* However, the Robinsons fail to put forth any evidence of racial discrimination other than Hicks' one remark, which alone is insufficient to establish a prima facie case of Commerce Clause violation. Thus, the District Court did not err in granting summary judgment on the Robinsons' Commerce Clause claim.

E.

The Robinsons argue that the Defendants violated their substantive due process right to familial integrity when Hicks directed the players not to repeat statements made at practices to their parents. Under the Fourteenth Amendment, we have recognized "the constitutionally protected liberty interests that parents have in the custody, care and management of their children." *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997). A violation of the Fourteenth Amendment right to substantive due process may be shown by a government actor's conduct that "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). Negligent

10

conduct falls beneath this constitutional due process threshold. *Id.* In this case, the District Court properly granted the Defendants' summary judgment motion because the statement made by Hicks was not so "egregiously unacceptable" or "inhumane" to be reasonably viewed as conduct that "shocks the conscience." *See Cruz-Erazo v. Rivera-Montanez*, 212 F.3d 617, 619-20, 622-24 (1st Cir. 2000) (holding police officers' repeated harassment and threatening phone calls were not so "egregiously unacceptable" as to "shock the conscience"); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 719, 726 (6th Cir. 1996) (upholding summary judgment for soccer coach that verbally abused and slapped fourteen-year-old female student because his actions fell short of "brutal" or "inhumane" conduct that would "constitute a violation of substantive due process").

## F.

The Robinsons further allege a claim under § 1983 and submit that the Defendants engaged in a civil conspiracy to deprive them of their First Amendment and Fourteenth Amendment rights by ousting them from the soccer program. To state a § 1983 claim, the Robinsons must establish that (1) the conduct complained of was committed by a person acting under color of state law and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right. *See Miller v. Mitchell*, 598 F.3d 139, 147-48 (3d Cir. 2010). To establish civil conspiracy, they must also show "a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999)

11

(citation omitted), *aff'd*, 210 F.3d 358 (3d Cir. 2000).  But the Robinsons fail to put forth "factual allegations that the Defendants plotted, planned, or conspired together to carry out" their suspension from the soccer program.  *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974).  They point to email correspondence between Bolognese and King as evidence that they conspired to oust the Robinsons from the soccer program, but the emails do not suggest a common goal or scheme to suspend the Robinsons. Moreover, the Robinsons cannot state a claim under § 1983 because there is "no constitutionally protected right to play sports."  *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 344 n.2 (3d Cir. 2004).  Thus, there are no genuine issues of material fact remaining as to the Robinsons' civil conspiracy claim.

G.

The Robinsons assert that the Defendants violated the Pennsylvania Human Relations Act ("PHRA"), which prohibits discrimination in employment, housing, and public accommodation.  43 Pa. Cons. Stat. § 953.  "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the [Pennsylvania Human Relations Commission] within 180 days of the alleged act of discrimination."  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Cons. Stat. § 959(a), 962).  The Robinsons concede that they have not filed a complaint with the Pennsylvania Human Relations Commission as required under law.  Therefore, the District Court did

12

not err in granting the Defendants' motion for summary judgment with respect to the

PHRA claim.

IV.

For the foregoing reasons, we will affirm the order of the District Court.